## Johnston *versus* Johnston's Administrator.

A promise by a husband, to his wife, to repay to her moneys received from her estate, previously to the Act of 1848, is void, as well for want of parties as for want of consideration.

A distinct and precise declaration, at the time of receiving the wife's chose in action, may be sufficient to establish the relation, on the part of the husband, of trustee for his wife; but mere loose declarations of an intention to repay the money are not enough.

Money received by the husband from his wife's estate, after the Act of 1848, is presumed to have been received for her; and an agreement to repay it will be binding on the husband's estate.

A direction by the wife to her husband to apply her moneys, received after the passage of the Act of 1848, in a particular manner, for her benefit and the comfort of her family, will bar the wife from any claim upon the husband's estate for the money so expended.

A subsequent promise by the husband to repay money so expended, is void for want of consideration.

If made at the time of expenditure, such promise might be treated as evidence of a loan of the money by the wife to her husband.

[Johnston *v.* Johnston's Administrator.]

ERROR to the Common Pleas of *Fayette county.*

This was an action of *assumpsit* by Louisa Johnston against Eli Abrams, administrator of George Johnston, her deceased husband, to recover a sum of $500, alleged to have been received by George Johnston, in his lifetime, from his wife's separate estate.

The plaintiff was married to George Johnston, the defendant's intestate, some time prior to the year 1847. She was entitled to a sum of $500 from her father's estate, one-half of which was paid to her husband in the fall of 1847.

The other half of the money was received by Johnston in December 1848. At that time, the parties resided in the country. Johnston had bought property in Brownsville, and, at his wife's instance, he repaired and fitted up one of the houses, with the money received from her estate in 1848. They afterwards moved into this house, and resided there.

On the trial, evidence was given that Johnston was a man of intemperate habits, which had caused much domestic ill feeling; and that, at various times, he had expressed his intention of repaying the money received from his wife's estate.

The court below (GILMORE, P. J.) charged the jury as follows:— "The money which the plaintiff alleges she has a right to recover from her husband's estate was received by him in part before, and part since, the Act of April 1848. There is no question that the money received by the husband belonged to her; it was derived directly from the sale of her real estate. The money which the husband received in December 1848, was not, by the act of receiving the same, made the property of the husband; it remained, without any act or declaration of the husband, still the property of the wife; but, in respect to this part, it is alleged that it was appropriated to the fitting up of a home at her particular request. We charge you, if you believe from the evidence that this money was appropriated in this way at her request, and that it was her own act and wish, intended for her comfort and that of the family, she cannot now recover it. The previous written consent is not required by the Act of 1848 for a disposition of this kind. In respect to the money received by the husband before the Act of 1848, it is in a different category. Before this act, when money of the wife came into the possession of the husband, it became his absolutely, unless there was a contrary intention; and the Supreme Court has said, in more than one case, that reduction into possession was still subject to the expressed intention of the husband."

The jury subsequently came into court, and requested the learned judge to give them more specific instructions on one point; that is, supposing that the wife did allow the money to be appropriated to the fitting up of the house, whether his agreement afterwards to pay it would be binding upon the intestate. The court, in answer, said, "If you are satisfied he distinctly made such a·

[Johnston *v.* Johnston's Administrator.]

promise or declaration of intention, there was a sufficient consideration to support such a declaration; but you must be satisfied that, in the declaration he made, he referred to this money received before the Act of 1848, as well as what was received after."

To this latter instruction the defendant excepted; and the jury having rendered a verdict in favor of the plaintiff, for $575.33, and judgment having been entered thereon, the defendant sued out this writ, and here assigned such charge for error.

*J. B. & A. Howell,* and *A. Patterson,* for the plaintiff in error, cited Darley *v.* Darley, 3 *Atk.* 399; Stoit *v.* Ayloff, 1 *Ch. Rep.* 33; Hind's Estate, 5 *Wh.* 143; Towers *v.* Hagner, 3 *Id.* 48; Clevenstine's Appeal, 3 *Harris* 499; Kyle *v.* Wells, 5 *Id.* 290; Bank *v.* Wilson, 10 *Watts* 261; Gray's Estate, 1 *Barr* 328; Gochenaur's Estate, 11 *Harris* 463; Livingston *v.* Livingston, 2 *Johns. Ch.* 537–9; *Story's Eq.,* § 1372.

*J. K. Ewing,* for the defendant in error, cited Hind's Estate, 5 *Wh.* 143; Timbers *v.* Katz, 6 *W. & S.* 290; Gray's Estate, 1 *Barr* 327; Gochenaur's Estate, 11 *Harris* 463; Herr's Appeal, 5 *W. & S.* 500.

The opinion of the court was delivered by

THOMPSON, J.—The general charge of the learned judge of the court below to the jury was not exceptionable, and there is no assignment of error upon it. But after having retired to consider of their verdict, the jury returned into court for further instruction, and propounded the following question : " Supposing that the wife did allow the money to be appropriated to the fitting up of the house, whether his agreement afterwards to pay it would be binding upon the intestate."

This inquiry evidently had in view instruction on the effect of an alleged contract between the husband and wife to repay her money received previously by him from her father's estate. To this the court responded, " That if you are satisfied he distinctly made such a promise or declaration of intention, there was a sufficient consideration to support such a declaration; but you must be satisfied that, in the declaration he made, he referred to this money received before the Act of 1848, as well as that received after." To this answer all the specifications of error apply, and may be considered together.

It is easy to understand how an error may be committed by a judge, under circumstances like those occurring in this case. A question involving important principles is suddenly propounded by a jury—the routine of business seems to call for an immediate response—it is given, and error often ensues for the want of time for reflection. Thus a fair chance to be accurate is scarcely

afforded. But however occurring, the reason for correction is the same—the symmetry of the law must be preserved.

Previously to the Act of 1848, the receipt by the husband of the wife's choses in action was presumed to be a reduction of them to his own possession, unless counteracted by proof of a "positive, precise, clear, and consistent" intention to the contrary, at the time of so doing: Gray's Estate, 1 *Barr* 329. The common law gave him this right as incident to the marriage relation: 3 *Harris* 499. The point of the inquiry by the jury was, whether, having so received the wife's money, his promise to pay it back was binding or not. The answer of the court was in the affirmative to the inquiry, both as to the money received before as well as after the Act of 1848. This was error. As to that portion received before the passage of the act, it could not be recovered from the husband's estate upon the footing of a contract afterwards made with the wife. The contract, as such, was void for want of parties as well as consideration. The law recognises no separate will as between husband and wife; Hind's Estate, 5 *Whart.* 138; and not until after the passage of the act referred to, could there be any contract between them. A contract to repay the money, executed at the time of the receipt of it, has been held to be evidence on the point of conversion, and was allowed a decisive effect in the case just referred to—but not as a contract *inter partes*. The instruction to the jury should have distinguished between the receipts before and after the act.

But the error went beyond this, for the instruction assumed the right of the plaintiff to recover, if the deceased had made a declaration of intention to pay, on the ground that the receipt of the money was a sufficient consideration to raise a promise. A recovery would be inevitable in every case, if this were the law. For it would generally be quite easy to procure some good listener, of tenacious memory, to prove such declarations—made no matter where, when, or under what circumstances; the result against the estate would be sure to follow. But it is not necessary to pursue the reflection, for, if an express contract would not have sufficient vitality to confer a right to recover, a mere declaration could scarcely be held to be more efficient.

It is not intended to deny that declarations made at the time of receiving the wife's money or choses in action, or afterwards, but clearly evincive of the intent at the moment of reduction to possession, may not repel the presumption of personal acquisition by the husband, and establish the relation of trustee for the wife. In such a case, the wife's right would survive: Gochenaur's Estate, 11 *Harris* 460. But to have such an effect, as was said by GIBSON, C. J., In re Gray's Estate, 1 *Barr* 327, "the medium of proof of such admissions is to be scanned with extreme vigilance; and to prevent the consequences of misapprehension, or mistake, on part

[Johnston *v.* Johnston's Administrator.]

of the witnesses, it is necessary that they be deliberate, positive, precise, clear, and consistent with each other; not inconsiderate, vague, or discrepant." In a word, the disclaimer of conversion by the husband to his own use, of his wife's money, must be clearly proved either by acts or declarations at the time, or by subsequent admissions which leave no doubt of the intent at the time. If the remark of the learned judge, about the declaration of intention by the intestate, subsequent to the receipt of the money, had referred to this aspect of the case, it was entirely insufficient to the true administration of the law, in a case of an attempted establishment of a trust for the benefit of the wife. Nor do we think the evidence, as exhibited on the paper-books, approached the requirement deemed indispensable to such a result in Gray's Estate, *supra.* There was nothing in the general charge to redeem the error in this particular.

As to that portion of the money received after the Act of 1848, it stood upon a different footing. The receipt of it by the husband rested upon an opposite presumption. As the law made it hers, it presumed it to have been received for her. So full was her right and dominion over it, that she might have loaned it to her husband, and his estate would have had to repay it. This being so, her power was equal to a direction to him to appropriate it for her benefit and comfort, which, if done, would bind her. So here, if she gave him direction to dispose of or expend it in a particular manner for her benefit and the comfort of her family, and it was so done, she would have no legal or equitable right to come upon her husband's estate for it. The law upon *that* part of the case was in the general charge correctly given to the jury; viz., " that if the money," received after the Act of 1848, " was appropriated to the fitting up of a house at her particular request," " for her own comfort and that of her family, she cannot now recover it." But this accurate view of the case was lost sight of in the answer to the point put by the jury. For without any reference to it, the court affirmed the proposition, " that if the wife did allow the money to be appropriated to fitting up the house, his agreement afterwards to pay it would be binding upon his estate," saying, " that if such a promise or declaration of intention was made, there was a sufficient consideration to support it." Had such a promise or declaration to repay been made at the time of expenditure, this might have been all right, for then the transaction might have been treated as a loan; but it is difficult to discover any consideration for a subsequent promise to repay it, made after an expenditure of it at the request of the wife for her comfort and benefit; that point, that it had been so expended, assumed in the question of the jury, they should have been instructed that there was no consideration for it. To hold the estate answerable upon a mere declaration of intention to pay, as the charge assumed

might be done, would lead to innumerable and gross frauds upon creditors and heirs.

Judgment reversed, and *venire facias de novo* awarded.