IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keila Palamar,                              :
                           Petitioner       :
                                            :
         v.                                 : No. 300 M.D. 2024
                                            : Submitted: May 6, 2025
Honorable Daniel J. Clifford, in his        :
official capacity,                          :
                           Respondent       :


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
PER CURIAM                                           FILED:  June 23, 2025


        Keila Palamar (Palamar),[1] *pro se*, has filed a petition for review in this Court's

original jurisdiction against the Honorable Daniel J. Clifford (Judge Clifford), in his

official capacity.  Judge Clifford is a family court judge serving on the Montgomery

County Court of Common Pleas and currently presides over Palamar's child custody

case.  Judge Clifford filed preliminary objections to the petition for review in which

he contends he is immune from suit under the doctrine of judicial immunity, among

other things.  After careful review, we sustain the preliminary objections on the basis

of judicial immunity and dismiss the petition for review with prejudice.

## BACKGROUND

        Palamar filed her *pro se* petition for review on June 10, 2024.  In substance,

Palamar avers Judge Clifford discriminated against her during her child custody case

---

[1] Documents indicate Palamar resumed her prior surname of Rodriguez as of December 2024, after
filing her petition for review and other relevant documents in this Court.  We will continue to refer
to the petitioner as Palamar for the sake of consistency.

and violated the law by eliminating her legal custody rights and removing her child from preschool, which deprived her of childcare and contributed significantly to her losing her job. Palamar avers Judge Clifford then eliminated her physical custody rights while entering improper default judgments against her, delaying or failing to address the pleadings she filed, and failing to make the necessary factual findings. Further, Palamar asserts Judge Clifford interfered with her ability to file pleadings with the county prothonotary's office and denied her request to waive the filing fees for her notices of appeal, resulting in her appeals being quashed. Palamar maintains Judge Clifford committed criminal offenses by sharing confidential information on a public docket, refusing to recuse himself from her case despite the separate federal lawsuit she filed against him, preventing her participation in a scheduled proceeding, preventing contact with her child, refusing to make rulings, and entering orders that contained false statements and were contrary to the evidence. Palamar contends she has suffered damages exceeding $1,443,900.

Judge Clifford filed preliminary objections on July 22, 2024, contending he is immune from Palamar's claims under the Eleventh Amendment to the United States Constitution[2] and the doctrines of sovereign immunity and judicial immunity. Judge Clifford further contends Palamar filed two prior federal lawsuits against him, both of which were dismissed on immunity grounds. He argues those dismissals preclude Palamar's current claims under the doctrines of res judicata and collateral estoppel. On August 12, 2024, Palamar filed a combined *pro se* response to the merits of Judge

---

[2] U.S. Const. amend XI.

2

Clifford's preliminary objections and motion contending the preliminary objections were untimely.[3]

## DISCUSSION

In reviewing preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments," but we need not accept legal conclusions, unwarranted factual inferences, argumentative allegations, or opinions. *Williams v. Wetzel*, 178 A.3d 920, 923 (Pa. Cmwlth. 2018). We cannot sustain Judge Clifford's preliminary objections unless it "appear[s] with certainty that the law will not permit recovery," and we resolve any doubts in favor of Palamar. *Firearm Owners Against Crime - Inst. for Legal, Legis. & Educ. Action v. Evanchick*, 291 A.3d 507, 515 (Pa. Cmwlth. 2023) (quoting *Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010)).

We conclude Judge Clifford's claim of judicial immunity is dispositive.[4] The doctrine of judicial immunity bars lawsuits for civil damages arising from a judge's "judicial acts." *Page v. Rogers*, 324 A.3d 661, 672 (Pa. Cmwlth. 2024). Immunity applies if "the judge has performed a judicial act; and . . . has some jurisdiction over

---

[3] This Court entered a per curiam Order on August 15, 2024, finding no merit to the contention that Judge Clifford's preliminary objections were untimely. Our Order explained there was no evidence as to when Judge Clifford received Palamar's petition for review, and Palamar had not alleged any prejudice. The Order also directed the parties to file additional paper copies of their briefs. Palamar filed what she titled an answer and new matter to this Court's Order on January 27, 2025. In part, Palamar alleges she experienced difficulties in filing additional paper copies of her brief with our Prothonotary's office and asserts an investigation is necessary. We are unaware of what may have caused the difficulties Palamar experienced. Nonetheless, Palamar's brief is available to the Court, and we have considered it in making our decision.

[4] Accordingly, we do not address Judge Clifford's remaining preliminary objections.

the subject matter before [him]."[5] *Id.* (quoting *Chasan v. Platt*, 244 A.3d 73, 81 (Pa. Cmwlth. 2020)) (emphasis omitted).

Palamar contends judicial immunity does not apply to Judge Clifford because he purportedly acted with malice, discriminated against her because of her disability, intentionally violated regulations, and committed various crimes.[6] Palamar's Br. at 6-25. Palamar also contends Judge Clifford acted without subject matter jurisdiction by conducting juvenile court proceedings during her child custody case. *Id.* at 21-22. Specifically, she alleges Judge Clifford eliminated her physical custody rights to her child without a hearing because of a pending children and youth investigation, although custody courts may not remove a child from a parent without a hearing and may only consider an investigation if it resulted in a finding of abuse or neglect. *Id.* at 21. Palamar alleges the children and youth agency closed the investigation against her without a finding of abuse or neglect, but Judge Clifford then ordered the agency to conduct a second investigation, which he again lacked authority to do. *Id.* at 21-22. Palamar explains the second investigation also closed without a finding of abuse or neglect. *Id.* at 22.

There is no dispute in this matter that Judge Clifford is a judge of the Court of Common Pleas of Montgomery County and has subject matter jurisdiction to preside

---

[5] Precedent also provides that judicial immunity will apply when "there is not clear absence of all jurisdiction over the subject matter *and person*." *Logan v. Lillie*, 728 A.2d 995, 998 (Pa. Cmwlth. 1999) (emphasis added); *but see Dykes v. Hosemann*, 776 F.2d 942, 943 (11th Cir. 1985) (en banc) (concluding personal jurisdiction is not necessary for judicial immunity to apply and describing a personal jurisdiction requirement as "contrary to precedent and policy"). Palamar does not appear to question Judge Clifford's personal jurisdiction over her.

[6] Palamar seemingly conflates the immunity defenses in Judge Clifford's preliminary objections. We note for Palamar's benefit that judicial immunity, unlike sovereign immunity, does not take into account whether the defendant meets the statutory definition of a "Commonwealth party." *See* Palamar's Br. at 16-17; Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501.

4

over Palamar's child custody case. Furthermore, Judge Clifford's rulings and orders in Palamar's case are distinctly judicial acts. The fact Palamar alleges Judge Clifford acted with malice and discriminatory intent or erred when rendering his rulings and orders does not deny him judicial immunity. Case law recognizes that "[j]udges are absolutely immune from liability for damages when performing judicial acts, even if their actions are in error or performed with malice," so long as they do not act in the absence of jurisdiction. *Guarrasi v. Scott*, 25 A.3d 394, 405 n.11 (Pa. Cmwlth. 2011); *see also Forrester v. White*, 484 U.S. 219, 229 (1988) (concluding absolute judicial immunity did not bar a sex discrimination suit because the defendant judge made the decisions to demote and discharge the plaintiff in his administrative, rather than judicial, capacity).

Palamar's contention that Judge Clifford committed crimes does not change our analysis. Judge Clifford's alleged crimes include refusing to recuse himself from Palamar's child custody case after she sued him in federal court and disseminating confidential information in public orders. Palamar further alleges Judge Clifford's handling of her case, including his rulings, statements in his orders, and procedural decisions amounted to obstruction of justice and official oppression, among various other offenses.[7] Once again, a judge's decisions regarding whether to recuse, what to say in orders, how to handle procedural matters, and the like are distinctly judicial acts. Although a judge may be subject to criminal prosecution for acts of corruption in office, that does not mean he or she lacks immunity for judicial decision making.[8]

---

[7] Regarding procedural decisions, Palamar additionally claims Judge Clifford filed false reports to court administration stating he did not have any cases pending 90 days or longer when, in fact, she filed pleadings during her child custody case that had remained unresolved for longer than 90 days.

[8] This is not to say that we agree Judge Clifford committed acts of corruption or criminal offenses. We merely recognize that judicial acts Judge Clifford undertakes with subject matter jurisdiction **(Footnote continued on next page…)**

*See Petition of Dwyer*, 406 A.2d 1355, 1361 n.6 (Pa. 1979) (holding quasi-judicial immunity barred the criminal prosecution of certain agency officials after a deadly fire but observing "official behavior involving crimes of corruption such as bribery, extortion, public office crimes, . . . [c]rimen falsi, conspiracy to commit crimes, etc., are not protected by judicial or quasi-judicial immunity").

By way of example, the District Court for the Middle District of Pennsylvania applied judicial immunity to the "courtroom conduct" of Mark Ciavarella, a former judge who sentenced juveniles to detention in exchange for kickbacks as part of the infamous "Kids for Cash" scandal, despite a pending federal grand jury indictment against him. *See Wallace v. Powell*, Nos. 3:09-cv-286, 3:09-cv-0291, 3:09-cv-0357, 3:09-cv-0630 (M.D. Pa., filed Nov. 20, 2009), slip op. at 13-20. The District Court explained the importance of judicial immunity, even in the event of grave corruption, which we quote for its persuasive value:

> Egregious conduct is immune to assure that honest mistakes will be immune. Subjecting judges to a determination of the existence of good faith on a case by case basis is not desirable. It would create chaos and undermine judicial independence. It would eliminate the finality of judgments and destroy public confidence in the judiciary. Every decision by every judge would be subject to attack (in court) on the basis that it was not an honest mistake. Even though almost all erroneous decisions-and history proves this-are honest mistakes, subjecting each decision to judicial scrutiny as to whether it was motivated by good faith, would render the justice system unstable, ineffective and would destroy public confidence in the judiciary. It would turn the justice system upside-down. Imagine the continuum of litigation over decisions to determine whether they were rendered in good faith. Even the decisions that determined they had been rendered in good faith would be subject to attack themselves, and so on. The notion of the stability provided by the finality of judgments would perish. Moreover, it is not as though judicial decisions are not

---

cannot subject him to a civil suit for damages, as Palamar has filed here, even if those acts might allegedly amount to corrupt or criminal behavior.

scrutinized. Mistakes are dealt with on appeal, and egregious behavior by judges is subject to prosecution under the criminal law and removal from office. It is readily apparent that the doctrine of judicial immunity, as it has developed and exists today, creates an environment which permits judges to be independent of the other branches of government, the will of the majority, and designing persons; it provides stability through finality; and, it has the confidence of the public.

Because the law requires that judges no matter how corrupt, who do not act in the clear absence of jurisdiction while performing a judicial act, are immune from suit, former Judge Ciavarella will escape liability for the vast majority of his conduct in this action. This is, to be sure, against the popular will, but it is the very oath which he is alleged to have so indecently, cavalierly, baselessly and willfully violated for personal gain that requires this Court to find him immune from suit. . . . The doctrine of judicial immunity need not, and does not, shelter Ciavarella['s] . . . non-judicial conduct.

*Id.*, slip op. at 18-19 (citation omitted).

Regarding Palamar's allegation Judge Clifford acted without subject matter jurisdiction by conducting juvenile court proceedings during her child custody case, Pennsylvania's Superior Court has explained custody courts have authority to enter awards of custody on a temporary basis pending a hearing. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 405 (Pa. Super. 2014). Furthermore, our child custody laws do not forbid courts from considering children and youth investigations that have not resulted in a finding of abuse or neglect[9] but contemplates courts should take "[a]ny . . . relevant factor" into consideration. *See* Section 5328(a)(16) of the Domestic Relations Code, 23 Pa.C.S. § 5328(a)(16). We have uncovered no authority that specifically permits

---

[9] Custody courts are expressly required to consider "[w]hether a party or a member of the party's household has been identified as the perpetrator in an indicated or founded report of child abuse" and "[w]hether a party or a member of a party's household has been provided [child protective or general protective] services" under Sections 5328(a)(2.1) and 5329.1(a) of the Domestic Relations Code, 23 Pa.C.S. §§ 5328(a)(2.1), 5329.1(a).

7

a custody court to order a children and youth investigation.[10]  However, Palamar's allegations indicate Judge Clifford ordered the investigation as a means of justifying his order that eliminated her physical custody rights.  This indicates, at worst, that Judge Clifford acted "in excess of his authority," rather than in the absence of subject matter jurisdiction.  *See Dwyer*, 406 A.2d at 1361 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

## CONCLUSION

Accepting the allegations in Palamar's petition for review as true, her claims challenge judicial acts that Judge Clifford performed while possessing subject matter jurisdiction over her child custody case.  Thus, judicial immunity bars Palamar's suit for civil damages.  Because an attempt to amend Palamar's petition for review would be futile given the nature of her claims, we will sustain Judge Clifford's preliminary objections and dismiss Palamar's petition for review with prejudice, that is, without allowance for amendment.  *See Chasan*, 244 A.3d at 84 n.10.

---

[10] *See Z.P. v. K.P.*, 269 A.3d 578, 594 (Pa. Super. 2022) (holding a custody court "lacked authority to dictate the manner in which the Commonwealth and [the children and youth agency] conducted its child abuse investigation in this case"); *but see* Pennsylvania Rule of Civil Procedure 1915.8(a), Pa.R.Civ.P. 1915.8(a) ("The [custody] court may order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keila Palamar,                          :
                        Petitioner     :
                                        :
            v.                          : No. 300 M.D. 2024
                                        :
Honorable Daniel J. Clifford, in his    :
official capacity,                      :
                        Respondent  :


**PER CURIAM**                    **O R D E R**


    **AND NOW**, this 23rd day of June 2025, the preliminary objections of the Honorable Daniel J. Clifford, in his official capacity, are **SUSTAINED**, and the petition for review of Keila Palamar is **DISMISSED** with **PREJUDICE**.